UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| KYLE VOTTERO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN SIROKY, *et al.*, )<br>)<br>Defendants. ) | Cause No. 2:23-CV-225-PPS-JPK |

## **OPINION AND ORDER**

This is a case about First Amendment freedoms and a four-letter expletive. Outside his house in Portage, Kyle Vottero flies a three-by-five-foot flag bearing the text "F**K JOE BIDEN and HOA." Vottero claims that he put the flag up on his property sometime after the 2020 election as a protest "against the election" and "certain actions" taken by his homeowner's association. On June 28, he received a letter from the City of Portage's Department of Code Enforcement concerning a violation of the City's "Prohibited Sign Ordinance." Viewing the letter as an imminent threat to his exercise of political speech, Vottero on July 2 filed this action [DE 1] and a motion for a temporary restraining order [DE 2] to prevent the City from enforcing the disputed Ordinance.

I temporarily enjoined the City from enforcing the Ordinance to maintain the status quo and set a schedule for the parties to submit briefing on Vottero's request for a preliminary injunction. [DE 7; DE 9; DE 14; DE 15.] While the parties were briefing Vottero's motion for a preliminary injunction, the City Council threw the towel in and voted to repeal the disputed Ordinance. [DE 22-1.]

In its brief in opposition to Vottero's motion for a preliminary injunction, the City asserts that his claims for declaratory and injunctive relief are rendered moot by the repeal and Vottero is not a prevailing party entitled to attorney's fees on these claims. [DE 22 at 4.] In addition, Defendants have filed a Rule 12(b)(6) motion to dismiss Vottero's damages claims under 42 U.S.C. § 1983 [DE 20], asserting that the repeal of the Ordinance renders the damages claims moot; or, alternatively, that the complaint fails to state a claim for relief because Vottero fails to plausibly allege a deprivation of his constitutional rights. Both motions are fully briefed, and I heard oral argument from the parties on September 5. [DE 19; DE 20; DE 21; DE 22; DE 23; DE 24; DE 25.]

At that hearing, I denied without prejudice Vottero's motion for a preliminary injunction in light of the City's repeal of the disputed Ordinance. I declined, however, to rule on whether Vottero was a prevailing party entitled to attorney's fees. [*See* DE 22 at 7–9.] Instead, I invited Vottero to submit a request for attorney's fees in connection with his declaratory and injunctive claims, noting that Defendants would have an opportunity to present their arguments if and when Vottero moved for an award of attorney's fees in connection with those mooted claims.

In sum, presently all that is before me is Defendants' motion to dismiss Vottero's damages claims (Counts III–V) for failure to state a claim. [DE 20.] For the reasons outlined below, I find that Vottero has plausibly alleged a deprivation of his constitutional rights in connection with the City's June 28 letter instructing him, in no uncertain terms, to remove the flag from his yard by a date certain, or else the City

2

would enforce the Ordinance with fines, fees, and other costs. Accordingly, the motion to dismiss will be denied.

## Background

Outside his house in Portage, Kyle Vottero flies a three-by-five-foot flag bearing the text "F**K JOE BIDEN and HOA." He claims that sometime after the 2020 presidential election, he chose to fly the flag as a protest "against the election" and "certain actions" taken by his homeowner's association. [DE 1, ¶ 2.]

On June 28, 2023, Vottero received a letter from the City of Portage. The letter, signed by John Siroky of the City's Code Enforcement Department, stated, "Signs, including flags, with obscene language are not permitted [and] there is a flag with obscene language being displayed on your property." *Id.*, ¶¶ 17–18. The letter enclosed a photo of Vottero's flag and a copy of the City's Prohibited Sign Ordinance (Code of Ordinances § 90-6.42), which defines "obscene signs" as "signs or other advertising structure[s] containing any obscene, indecent, or immoral matter." *Id.*, ¶¶ 19–20. "To avoid further action," Vottero was told to "remove the flag from public view no later than July 2, 2023," and admonished—in no uncertain terms—that "[f]ailure to do so will leave the City . . . no choice but to pursue all avenues to remedy the situation including the issuance of fines/citations and/or other legal action." *Id.*, ¶ 21. The letter also noted that Vottero would "be responsible for any and all costs incurred." *Id.*, ¶ 22.

Instead of folding in the face of Portage's threat and taking the flag down, Vottero went on the offensive. After consulting with his attorney, Vottero on July 2 filed this

action to obtain a declaratory judgment and permanent injunctive relief against the City of Portage (Counts I–II), as well as damages for deprivation of his constitutional right to free speech against various officers and employees of the City, individually and in their official capacities (Counts III–V). [DE 1 at 4–9.] More specifically, in Counts III, IV, and V of the complaint, Vottero has respectively named as individual defendants: Siroky (Count III); the City's Mayor, Sue Lynch (Count IV); and various members of its City Council – Deb Podgorski, Scott Williams, Gina Giese-Hurst, Patrick Clem, Brian Gulley, Collin Czilli, and Ferdinand Alvarez (Count V). [DE 1, ¶¶ 2–11; *id.* at 6–9.] Vottero claims that these individual defendants, acting under color of state law, deprived him of his right to freedom of speech by enacting the Prohibited Sign Ordinance, causing him to receive a letter alleging he was in violation of the Ordinance, and threatening him with "substantial fines" if he did not remove the flag as requested. *Id.*, ¶¶ 36, 41, 46–47.

As previously noted, Vottero moved for entry of a temporary restraining order. [DE 2.] Following a telephonic hearing (which proceeded *ex parte*, despite best efforts of the Court and Plaintiff's counsel to ensure Defendants' participation), I entered an order temporarily restraining the City of Portage for 14 days from taking any action to enforce the disputed Ordinance until this matter could be heard on the merits. [DE 9.] The parties later agreed to extend the TRO for 60 days, and I issued an order to that effect. [DE 15.] That order is set to expire on September 11. *Id.*

The parties submitted briefing on Vottero's request for a preliminary injunction. [DE 19; DE 22; DE 23.] But while the briefing was in the works, the City of Portage

4

Common Council held a special meeting, at which the City Attorney recommended that the Ordinance be repealed because it violates the First Amendment as written. [DE 22-1.] The City Council voted unanimously to repeal the Ordinance. *Id.* While the City Attorney has recommended that the City Counsel consider forming a committee to review the issues presented by the Ordinance and potentially consider a new law to take its place, this process will entail several steps prior to consideration of any proposal. *Id.* In short, after Vottero sued the City claiming the Ordinance violated his right to free speech, the City evidently agreed, repealed the law, has not passed any new law into effect, and does not appear likely to do so in the near future.

## Discussion

Before diving into the substance of Defendants' motion, let's start with a brief discussion of the standards that govern my decisionmaking. Under Federal Rule of Civil Procedure 8(a), Vottero's complaint is required to contain "a short and plain statement showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a). Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

At this stage, I accept the complaint's allegations as true and draw all reasonable inferences in Vottero's favor. *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021). However, to avoid dismissal under Rule 12(b)(6), his claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires a plaintiff

to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that a plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[S]heer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden. *Taha*, 947 F.3d at 469.

## I. The Repeal Does Not Moot Vottero's Damages Claims

Initially, Defendants assert that, like Vottero's claims for declaratory and injunctive relief, the repeal of the Ordinance renders his damages claims moot. As I noted at the hearing, this argument should be raised in a Rule 12(b)(1) motion to dismiss, because it goes to whether I have subject matter jurisdiction to entertain the suit. *See St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (internal citation omitted) (in reviewing Rule 12(b)(1) motion to dismiss, including those based on "mootness grounds," court accepts as true all well pled factual allegations and draws all reasonable inferences in plaintiff's favor). With that in mind, let's get to the substance.

As the Seventh Circuit has explained, "Under Article III of the Constitution, as interpreted by the courts, cases that do not involve 'actual, ongoing controversies' are

6

moot and must be dismissed for lack of jurisdiction." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 929 (7th Cir. 2003) (citing *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990–91 (7th Cir. 2000)). When a challenged ordinance is repealed during the pendency of litigation and a plaintiff "seeks only prospective relief," the case is moot. *See id.* (citing *Rembert v. Sheahan*, 62 F.3d 937, 940 (7th Cir. 1995)).

*Representatives* clearly holds that the City's repeal of the challenged Ordinance renders Vottero's claims for prospective relief moot. But the case did not involve any live damages claim. 326 F.3d at 929 (noting "no damage claim remain[ed] in the case," as the district court had "explicitly denied Federation's claim for damages, holding that no evidence had been submitted to support the claim"), *aff'ing in part, rev'ing in part* 12 F. Supp. 2d 844, 854 (N.D. Ill. 1998) (noting plaintiff carried burden of proof on issue of damages and provided no evidence in support of damages at summary judgment). The question presented is thus whether repeal of a challenged ordinance moots pending litigation where the plaintiff asserts claims for prospective and compensatory relief in connection with an alleged deprivation of constitutional rights.

Defendants point me to one case in support of their mootness argument. In *Peterson v. Village of Downer's Grove*, the Northern District of Illinois considered whether the Village's repeal of a disputed ordinance mooted the plaintiff's First Amendment claims. 150 F. Supp. 3d 910, 925–26 (N.D. Ill. 2015). The court applied *Representatives* and held the plaintiff's claims for prospective relief were moot. *Id.* at 925. Moving on to the plaintiff's claim for one dollar in nominal damages, the court observed that a plaintiff

7

"who has been deprived of a constitutional right is entitled to nominal damages, . . . even absent actual damages." *Id.* at 926 (citing *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992)). The issue, however, was that the Village "never did commit a constitutional violation . . . because [it] never enforced its short-lived ban on [the disputed sign]." *Id.* Noting that the disputed sign was in place before the law was enacted, remained in place after its enactment, and was still in place at the time of ruling—plus the fact that the plaintiff was "was never fined for having a non-conforming sign when the ban was in effect"—the court concluded the "request for nominal damages is likewise moot." *Id.*

Here, Vottero seeks as relief compensatory damages to "make him whole with respect to the emotional distress, humiliation, embarrassment, [and] damages to reputation he has suffered," as well as "to deter future intentional unlawful actions by the Defendants," as a result of Defendants enacting the Prohibited Sign Ordinance, causing him to receive a letter alleging he was in violation of the Ordinance, and threatening him with "substantial fines" if he did not remove the flag as requested. [DE 1, ¶¶ 36, 41, 46–47, 52–53.] Unlike in *Peterson*, in which the Village had "agreed not to fine [the plaintiff] during th[e] case's pendency," *see* 150 F. Supp. 3d at 917, 926, here, the City of Portage mailed Vottero a letter stating that if he did not follow its directive and take down the flag within four days, it would "leave the City of Portage no choice" but to "remedy the situation including by issuance of fines/citations and/or other legal action." This was coupled with a stern reminder that Vottero would "be responsible for any and all costs incurred." [DE 1, ¶¶ 17–22.]

8

Of course, none of that came to be, as the City was temporarily enjoined from enforcing the Ordinance. But while the City Counsel subsequently voted to repeal the law, there is no indication that the City would have simply bluffed and let the flag continue flying if Vottero hadn't rushed to court on July 2and obtained an order preventing enforcement of the law. And as noted above, upon being tendered a notice of a violation of the Ordinance by the City's Code Enforcement Department and instructed to immediately take down the flag, Vottero claims to have suffered not just nominal damages, but actual damages in the form of emotional distress, humiliation, embarrassment, and damages to his reputation.

For all of these reasons, I decline to follow the district court's approach in *Peterson*. Because I conclude that the repeal of the challenged Ordinance does not automatically render moot Vottero's claims for actual damages caused by the alleged deprivations of his constitutional rights, I will proceed to consider the balance of Defendants' arguments for dismissal of Counts III–V.

## II.     Vottero Plausibly Asserts a First Amendment Retaliation Claim

Defendants' alternative argument for dismissal is that Vottero fails to adequately allege an actual deprivation of his constitutional rights to state a claim for compensatory damages under 42 U.S.C. § 1983. [DE 20 at 2; DE 21 at 9–16.] This argument is based largely on a pair of dated Seventh Circuit cases, in which courts dismissed analogous First Amendment claims at the pleadings stage. *See generally Goldschmidt v. Patchett*, 686 F.2d 582 (7th Cir. 1982); *Reichenberger v. Pritchard*, 660 F.2d 280 (7th Cir. 1981).

In *Reichenberger*, owners and operators of nightclubs asserted a § 1983 claim based on a series of adverse zoning actions and an attempt to revoke their liquor licenses, which allegedly curtailed their expressive activities and caused them to suffer monetary losses and mental distress. The plaintiffs went through numerous administrative proceedings, which ultimately resulted in renewal of their licenses, prior to filing suit to prevent the defendants from further attempts to suppress nude dancing at the clubs. 660 F.2d at 284. The district court determined plaintiffs did not suffer an actual deprivation of constitutional rights to state a claim under § 1983. On appeal, the plaintiffs argued that all they had to show was that they were "subjected to" a deprivation of rights, "which includes a presently existing actual threat of deprivation." *Id.*

The Seventh Circuit disagreed, noting that plaintiffs acknowledged that the nude dancing "continues as ever at their two clubs," and they had not been deprived of their liquor licenses. *Id.* at 285. The court noted a string of cases allowing § 1983 claims to go forward based on a threat of deprivation of constitutional rights, acknowledging that "courts have granted relief based upon defendants' activity which has threatened to deprive plaintiffs of rights but has not yet actually done so." *Id.* at 286–87 (collecting cases). Distinguishing these cases, the court held that applicable precedent required dismissal of a claim where the plaintiffs offered no allegations of "interruption or state-imposed burden on the[ir] First Amendment rights, [and no] allegation that the defendants' activities will threaten plaintiffs' abilities to carry on the daily functions of life." *Id.* at 286.

*Goldschmidt* is more factually analogous to Vottero's case. There, an attorney placed a newspaper advertisement for divorce services. He received a letter from a state's attorney advising him that the advertisement appeared to violate state law and that the issue had been referred to a prosecutor. 686 F.2d at 584. The attorney sued a few days after receiving the letter, asserting that the threat to prosecute him for placing an advertisement in the paper had a "chilling effect" on his ability to exercise First Amendment rights, and that prosecuting him under the law would cause a constitutional injury. *Id.* The district court dismissed his damages claim and the Seventh Circuit affirmed.

The court observed that the prosecutor's action could "be characterized at most as a warning or a threat" and "the plaintiff continued his advertising." *Id.* at 585. Noting its prior holding in *Reichenberger*, the court reaffirmed that an "existing threat of deprivation of free speech" is not enough to establish actual denial of civil rights , and the "mere possibility of remote or speculative future injury or invasion of rights will not suffice" to state a § 1983 claim. *Id.* (citing 660 F.2d at 284–85).

It appears that *Reichenberger* and *Goldschmidt* have not been called into question, in pertinent part. It follows that to the extent Vottero is asserting an actual deprivation of his First Amendment rights, his factual allegations fall short. The threat of fines and related costs in this case mirrors the threat the plaintiff faced in *Goldschmidt*. And like in *Reichenberger*, here Vottero cannot claim that his expression has been interrupted by Defendants' conduct.

11

Vottero does not respond meaningfully to these authorities. Instead, he argues that the complaint's allegations make out a plausible claim that Defendants *retaliated* against his exercise of First Amendment rights. [DE 23 at 6 (citing *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021).] Defendants, for their part, argue that this is a new theory of harm improperly raised for the first time in Vottero's response brief. [DE 24 at 4.]

It is true that the complaint styles Counts III–V as claims for an actual deprivation of Vottero's right to freely express himself by flying the flag on his property. But I think Defendants are mincing things too finely. The circuit recently "sound[ed] a soft reminder" to the district courts that "Rule 8(a) does not require plaintiffs to 'pin' their claim for relief to any particular legal theory at the pleading stage." *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022) (internal citations omitted). *See also Koger v. Dart*, 950 F.3d 971, 974 (7th Cir. 2020) ("Complaints plead *grievances*, not legal theories.") Vottero pleads facts suggesting that Defendants intentionally retaliated against him by sending him a letter threatening imminent fines and costs due to his public expression of dissatisfaction with the result of the 2020 election and actions taken by his homeowner's association. Following the circuit's lead in *Zimmerman*, I will construe Counts III–V as asserting claims for retaliation against Vottero's exercise of First Amendment rights. *See, e.g.*, *Libbra v. City of Litchfield, Ill.*, 893 F. Supp. 1370, 1375–76 & n.2 (C.D. Ill. 1995) (construing claims characterized as conspiracy to deprive plaintiffs of First Amendment rights as claim for conspiracy to retaliate against plaintiffs' exercise of First Amendment rights).

A First Amendment retaliation claim requires a showing that (1) the plaintiff engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Defendants argue that even if Vottero is permitted to assert a retaliation claim, his allegations do not pass muster because he did not suffer a constitutional injury. [DE 24 at 6.] I disagree. As the Seventh Circuit recently stated, a municipality "cannot dodge a claim for monetary damages by repealing an unconstitutional regulation." *GEFT Outdoor, LLC v. Monroe County, Indiana*, 62 F.4th 321, 326 (7th Cir. 2023). The law is clear that freedom of speech is a "form of liberty protected by the Fourteenth Amendment" and "official retaliation for exercising one's freedom of speech is actionable as an infringement of that freedom." *Smart v. Bd. of Trustees of Univ. of Ill.*, 34 F.3d 432, 434 (7th Cir. 1994), *abrogated on other grounds by Ienco v. City of Chi.*, 286 F.3d 994 (7th Cir. 2002); *see Libbra*, 893 F. Supp. at 1376 ("Assuming the content of the signs qualifies as protected speech and the Libbras were in fact retaliated against, such a claim is undoubtedly actionable under § 1983.").

Accepting the complaint's factual allegations as true, Vottero flew his flag to express political viewpoints. Then, he received an official letter from the City threatening to fine him under the Ordinance if the flag was not removed from public view within four days. As a result, he suffered actual damages in the form of fear and emotional

13

distress. The gravamen of these factual allegations is that Defendants acted under color of state law to intimidate Vottero into taking his flag down after he expressed his political viewpoint – asking that he "please" remove it from view, followed by a thinly-veiled "or else." At this stage, that is enough to state a facially plausible claim for damages based on a First Amendment retaliation theory.

Defendants' final argument for dismissal is that the retaliation claims must be dismissed under the doctrine of qualified immunity. [DE 24 at 7–8.] The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Government officials, like the individual defendants named in this case, are entitled to immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When a defendant raises the affirmative defense of qualified immunity, the plaintiff "must show two things: first, that there has been a violation of one or more of her federal constitutional rights, and second, that the constitutional standards at issue were clearly established at the time of the alleged violation." *Id.* (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). The law is "clearly established" when "various courts have agreed that certain conduct is a

constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Id.* (citing *Campbell*, 256 F.3d at 701).

The problem with the qualified immunity argument is that it was raised for the first time in Defendants' reply brief. This means that I only have one side of the story. This is the perfect illustration of why there are rules that permit me to ignore arguments raised for the first time in reply briefs. As the Seventh Circuit put it: "arguments raised for the first time in [a] reply brief are waived because" the opponent has "no chance to respond." *White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (internal citations omitted). As a result, it would be premature to dismiss Vottero's claims under Rule 12(b)(6) – at least at this juncture.

In sum, Defendants are not entitled to qualified immunity as the issue is presently before me. They may, of course, renew this defense in a motion for judgment on the pleadings or at summary judgment.

**ACCORDINGLY:**

Defendants' motion to dismiss [DE 20] is **DENIED**.

**SO ORDERED**.

ENTERED: September 8, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
